**In the Matter of the Liquidation of UNITED SOUTHERN BANK OF NASHVILLE, Nashville, Tennessee, a Tennessee Banking Corporation.**

Supreme Court of Tennessee.

Oct. 6, 1986.

Val Sanford, Dick Lansden, William L. Brooks, Lew Conner, Aubrey B. Harwell, Jr., Thomas P. Kanaday, Jr., Robert P. Ziegler, Herbert R. Rich, Richard Lodge,

Frank C. Gorrell, R. Dale Grimes, Nashville, for applicants.

G.W. Morton, Jr., Rex R. Veal, Knoxville, for appellee.

## OPINION

FONES, Justice.

This is a Rule 10 application. Appellants filed a motion to intervene in a bank receivership, pursuant to Tennessee Rules of Civil Procedure 24. Two of appellants are stockholders and they and the other appellants are former Directors of the United Southern Bank of Nashville (USBN).

The trial judge held that although the Court had been asked to and had approved a sale of the assets of USBN to Union Planters National Bank of Memphis (UPNB) in May 1983, there was no receivership pending in which appellants could intervene.

The Court of Appeals denied appellants' Rule 10 discretionary appeal without reaching the merits.

### I.

Appellants attached to their motion to intervene the complaint that they sought permission to file against Federal Deposit Insurance Corporation (FDIC) in its capacity of receiver (FDIC–R) of USBN in the receivership proceeding which they asserted was pending. In the complaint appellants recited the following background events: that on 27 May 1983 the Commissioner of Banking of Tennessee assumed possession of USBN, determined that it should be liquidated, appointed FDIC as receiver pursuant to the authority granted the Commissioner in T.C.A. § 45–2–802[1], and filed notice of possession in the trial court, pursuant to T.C.A. § 45–2–1502; that on the same day FDIC–R entered into a purchase and assumption agreement with UPNB wherein that bank acquired certain assets and assumed the deposit obligations of USBN; that FDIC–R entered into a second contract that same day with FDIC in its corporate capacity (FDIC–C) wherein all assets of USBN not purchased by the assuming bank were transferred to FDIC–C. A copy of that contract was attached as an exhibit to the proposed complaint.[2]

It was further alleged that FDIC–R filed a petition in the Chancery Court of Davidson County seeking ex parte approval[3] of

---

**1.** 45–2–802. *Appointment of Federal Deposit Insurance Corporation as receiver of state bank—Powers and duties.*—The Federal Deposit Insurance Corporation may be appointed receiver of any state bank, the deposits in which are to any extent insured by said corporation and which shall have been closed on account of inability to meet the demands of its depositors, or otherwise by the law of Tennessee. The commissioner after taking possession of a state bank shall have the right to appoint the Federal Deposit Insurance Corporation as receiver. Upon acceptance of the appointment as receiver, the Federal Deposit Insurance Corporation shall not be required to post bond or security. If the said corporation accepts such appointment, it shall have and possess all of the duties, powers, and privileges provided by the laws of this state with respect to receivers of closed banks, except insofar as such duties, powers, and privileges are in conflict with the Federal Deposit Insurance Act. In addition thereto, the Federal Deposit Insurance Corporation as receiver shall have the right to make an emergency sale of assets of a closed bank as provided in part 15 of chapter 2 of this title.

**2.** The description of the assets transferred by FDIC–R to FDIC–C in that contract reads in part as follows:

Assets so purchased by the corporation shall specifically include but not be limited to, (1) all contracts, rights, claims, demands, and choses in action whatsoever not purchased by the assuming bank; ... (3) all pending claims, actions or judgments, whether known or unknown, which the receiver owns, holds, or has against any surety, insuror, or any person or persons whomsoever, including, without being limited to, any claim or claims against its directors, officers, or employees arising out of any act or acts of any such persons in respect to the bank or its property, by virtue of the non-performance or manner of performance of their duties or against any shareholder or holding company of the bank.

**3.** T.C.A. § 45–2–1502(c)(2) provides in part:

Upon a determination to liquidate, the commissioner may, with ex parte approval of the court in which the notice of possession was filed, sell all or any part of the state bank's assets to another state or national bank or to the Federal Deposit Insurance Corporation. The commissioner may also, with ex parte

the sale of the assets of USBN to UPNB and FDIC–C in accord with the two contracts aforesaid, and that an order approving those sales was entered on that day, 27 May 1983.

Appellants alleged that on 30 May 1985, FDIC–C filed suit against appellants and others in the United States District Court for the Middle District of Tennessee asserting a cause of action based upon failure to exercise reasonable care, skill and diligence in the discharge of their duties resulting in loss and damage to USBN of not less than twenty million dollars; that FDIC is authorized to function in the dual capacity of receiver of a state bank and in its corporate capacity and that jurisdiction over FDIC–C is in the federal courts but jurisdiction over FDIC, as a receiver of a state bank, is in the appropriate state court, in this instance Tennessee. Further, that any issue as to the powers, duties and acts of FDIC–R arise under the laws of Tennessee and must be determined by the courts of Tennessee.

Continuing, appellants alleged therein that their interests,

[a]re, or may be, affected by the contract of sale, exhibit A hereto, and these plaintiffs are entitled to have the validity and proper construction thereof and their rights, status and legal relations thereunder, determined and declared pursuant to chapter 14, of title 29, Tennessee Code Annotated.

Thereafter, three counts were included in the proposed complaint. In the first count it was asserted that the claims against appellants and others were "conditional assets" that did not vest in the receiver, unless and until the court determined that it was necessary to resort to them; that no such determination had been made and the transfer of those claims was invalid; that a receiver is without authority to transfer an equity claim such as the claim asserted in the federal court against appellants, and

which could only be pursued by the receiver, implicitly after receiving the express authorization of the Tennessee Court wherein the receivership was pending.

In the second count, as alternative relief, appellants sought a construction of the contract of sale wherein FDIC–R transferred all claims and choses in action against the directors, officers, employees, etc., of USBN to FDIC–C and a finding that (1) the claim was not included in the assets to FDIC–C, (2) the contract transferred only the right to proceeds of any claims that might be pursued by FDIC–R or (3) if the contract be construed as transferring the claim, that it be construed as imposing the obligations and duties of FDIC–R upon FDIC–C. In both count one and count two appellants alleged that they were entitled to declaratory judgments on the issues asserted therein.

In count three appellants alleged that the only report filed by FDIC–R was filed in December 1983, which merely reflected the status of the assets of the bank as of 27 May 1983; that the extent of liability of appellants as directors, if any, will depend upon the collection of assets and enforcement of claims, which are duties imposed upon FDIC–R; that since appellants' direct and immediate interests are thus affected, they are entitled to an order requiring FDIC–R to file an accounting, "showing the results, extent and status of efforts made by it, or on its behalf, to enforce the claims of the bank, and to collect its assets."

## II.

In this Court appellants say there are two issues: first, is a receivership pending in the Chancery Court of Davidson County in which intervention is possible; and second, are appellants entitled to intervene and file their proposed complaint in the receivership proceeding?

approval of the court, borrow from the Federal Deposit Insurance Corporation any amount necessary to facilitate the assumption of deposit liabilities by a newly chartered or existing bank and may assign any part or all of the assets of the state bank as security for such loan.

FDIC–R says the threshold issue is whether FDIC–R is subject to and governed by T.C.A. § 45–2–1502, et seq., as it insists, or whether it is a general equity receivership, as appellants contend. In either event, FDIC–R asserts that applicants as potential debtors have no standing to intervene for the purpose of controlling or influencing the bringing of a suit against themselves, which is the gravamen of the proposed complaint; that the claims against appellants were sold under statutory authority to FDIC–C, that the sale was approved by the court and the court's order approving the sale is not subject to attack by appellants or any other intervenor.

FDIC–R acknowledges that in due course it must file an accounting in the Chancery Court of Davidson County and that it is subject to the duties imposed upon a commissioner-appointed receiver as set forth in T.C.A. § 45–2–1501, et seq.

### III.

The first issue we will consider is whether there is a receivership proceeding pending in the Chancery Court of Davidson County in the matter of the liquidation of USBN.

The chancellor's order denying the motion to intervene reads in part as follows:

This court has never appointed a receiver in this suit and there is no such receivership. In May 1983, this court was asked to and did approve a sale of assets to Union Planter's Bank. The case began and ended at that time and there is no suit pending in this court in which the intervenors can intervene.

■ The trial court was incorrect in holding that the case ended with the approval of the sale of assets to Union Planter's Bank.

The proceeding that began 27 May 1983 with the petition of FDIC–R to approve the sale of some of the assets of USBN to UPNB and all of the remainder of the assets to FDIC–C instituted a statutory bank receivership pursuant to the express authority contained in the Tennessee Banking Act, as amended, Title 45, chapters 1 and 2 of Tennessee Code Annotated, specifically T.C.A. § 45–2–802 and T.C.A. §§ 45–2–1501—1504. The ex parte sale authorized in T.C.A. § 45–2–1502(2) had taken place more than two years prior to appellants' motion to intervene, but the statutes direct the commissioner or his duly appointed receiver—in this instance FDIC–R—as to how to proceed with the handling of claims, the filing of a schedule of determinations reflecting who is to be paid and how much, and the filing of a final accounting and termination of the proceeding. See T.C.A. § 45–2–1504. Obviously, a bank liquidation proceeding under Title 45 is pending until the accounting is filed in court and approved.

As indicated heretofore the FDIC–R acknowledges that the proceeding in this matter is still pending until it complies with all of the statutory directives and obtains approval of its final accounting.

■ The second issue we will consider is whether appellants have standing to intervene in this pending proceeding. Appellants assert that they are being sued by FDIC–C for failure to exercise reasonable care, skill and diligence in discharging their duties as directors of USBN. Their status in this litigation is that of potential debtors. In that status they seek an adjudication that the sale of the claims against them was invalid and implicitly that the claim still belongs to FDIC–R; that they have a right to demand that before the chancellor can approve the bringing of any suit against them, the receiver file an accounting.

Appellants cite no authority whatsoever for the proposition that debtors or potential debtors of a seller have standing to attack a court order approving a sale of assets of their potential creditor, that included claims and choses in action against them, more than two years after the entry and consummation of such a sale.

To the contrary, there is authority that debtors in a somewhat analogous position to appellants have no standing. In *FDIC v.*

*Moore,* 448 F.Supp. 493 (1978), the Board of Bank Control of South Carolina had appointed FDIC as receiver of a bank in liquidation and the receiver had sold to FDIC Corporate the assets remaining after a sale to an assuming bank, as in the case at bar. Those assets included a promissory note upon which the suit in *Moore* was predicated. The defendant, maker of the note, sought to interpose defenses that attacked the legality of FDIC–R's status as receiver under South Carolina law. The court held that the only parties with standing to complain about FDIC's acquisition of the assets of the bank in liquidation was the bank itself or its stockholders.

Ex parte court approval of sales of the assets of banks in liquidation pursuant to the purchase-assumption method have been held immune from constitutional due process attacks, because of the special character of banks, the delicate problems involved in preserving credit, depositor relationships and confidence in the banking system. *See,* e.g., *FDIC v. Lesselyoung,* 476 F.Supp. 938 (E.D.Wis.1979); *In re American City Bank & Trust Co.,* 402 F.Supp. 1229 (E.D.Wis.1975); and *In re Franklin National Bank,* 381 F.Supp. 1390 (E.D.N.Y.1974).

■ In our opinion due process requirements are satisfied if depositors, creditors and stockholders are accorded a right to require the receiver to account for any alleged misfeasance or malfeasance in connection with that sale, subsequent to its consummation. We are also of the opinion that the legislative purpose in authorizing an ex parte court approval of a sale of all of the assets of a bank in liquidation was to insulate the consummation of such a sale from litigation and render it immune from subsequent attempts to set it aside; that the nature of the banking business required such a procedure for the same reasons mentioned above, which sustain the constitutionality of that procedure.

In T.C.A. § 45–2–1504(g) the Legislature has limited standing to contest a receiver's "schedule of determinations" to creditors, depositors and stockholders. Although the statutes are silent with respect to who may be heard to question other acts of the commissioner or his duly appointed receiver, we hold that debtors and prospective debtors have no standing to intervene at any stage of a bank receivership pursuant to Title 45, chapters 1 and 2 of T.C.A.

In summary, all claims of USBN against its directors were transferred to FDIC–C, an entity not a party to this litigation, on 27 May 1983, by a court approved sale that cannot be set aside. Thus, the subject matter sought to be reached by appellants in their proposed complaint has been removed from the jurisdiction of the Chancery Court of Davidson County. Further we hold that to whatever extent it may be appropriate to entertain a post-consummation attack on the ex parte approval of a purchase-assumption disposition of the assets of a bank in liquidation under Title 45, T.C.A., debtors and potential debtors have no standing to do so. The gravamen of the proposed complaint is a grievance of directors and the relief sought is for the benefit of directors. The two appellants who are in the dual capacity of stockholder-director have alleged no basis in the proposed complaint for stockholder intervention, and the relief sought does not involve a stockholder interest within the purview of T.R.C.P. 24.

The judgment of the Chancery Court of Davidson County denying appellants' motion to intervene is affirmed. Costs are adjudged against appellants.

BROCK, C.J., DROWOTA, J., and BYERS and McDONALD, Special Justices, concur.